IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| DOROTHY MATTHEWS, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )    CIVIL ACTION 05-0570-WS-C |
| | ) |
| ALASKA SEABOARD PARTNERS | ) |
| LIMITED PARTNERSHIP, et al., | ) |
| | ) |
| **Defendants.** | ) |

**ORDER**

This matter is before the Court on the motion of defendant Alaska Seaboard Partners Limited Partnership ("Alaska") for summary judgment. (Doc. 62). The parties have filed briefs and evidentiary materials in support of their respective positions, (Docs. 62, 76, 78), and the motion is ripe for resolution. After carefully considering the foregoing materials, the Court concludes that the motion for summary judgment is due to be granted in part and denied in part.

**BACKGROUND**

In 1994, the plaintiff and her deceased husband[1] borrowed approximately $21,000 from NationsCredit Financial Services Corporation ("NationsCredit"). Payment of the note was secured by a mortgage. After several assignments, Alaska came to hold the note and mortgage. According to the plaintiff, she satisfied the debt but Alaska nevertheless instituted foreclosure proceedings in early 2005.

The plaintiff sued NationsCredit and all subsequent holders of the mortgage. In August 2006, the plaintiff settled with all defendants except Alaska. (Docs. 77, 79). The complaint alleges the following causes of action:

- wrongful foreclosure;

- negligence;

---

[1]For convenience, this order describes the loan, documents, payments, and other action thereon by reference to "the plaintiff."

- •      wantonness;

- •      breach of mortgage and note;

- •      fraud; and

- •      defamation.

The complaint identifies Alaska's wrongful conduct as: (1) failing properly to apply credits for payments made on the loan; (2) charging interest in excess of that stated in the promissory note; and (3) instituting and publicizing foreclosure proceedings at a time the plaintiff owed nothing. The plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## CONCLUSIONS OF LAW

The Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a).

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). The moving party may meet its burden in either of two ways: (1) by "negating an element of the non-moving party's claim"; or (2) by "point[ing] to materials on file that demonstrate that the party bearing the burden of proof at trial will not be able to meet that burden." *Id*. Once the moving party has satisfied its responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986))(footnote omitted).

The parties have submitted a number of exhibits, to some of which (especially depositions) they have referred only in part. There is no burden on the Court to identify

unreferenced evidence supporting a party's position.[2]  Similarly, "[t]here is no burden upon the

district court to distill every potential argument that could be made based upon the materials

before it on summary judgment."  *Resolution Trust Corp. v. Dunmar Corp*., 43 F.3d 587, 599

(11th Cir. 1995).  Accordingly, the Court's review is limited to those portions of the exhibits to

which the parties have specifically cited.  The Court's review is similarly limited to those legal

arguments the parties have expressly advanced.

**I.  Agency.**

        Alaska argues that, while it held the note and mortgage, the loan was serviced by non-

party SN Servicing Corporation ("SN") pursuant to a contract between Alaska and SN that

required SN to handle all aspects of the mortgage loan, including correspondence, statements,

and foreclosure.  (Doc. 62 at 7-8).  Alaska denies that it, as opposed to SN, had anything to do

with the servicing of the loan or attempted foreclosure on the mortgage.  (*Id*. at 9-11, 12-13, 17).

        The problem with this argument is Alaska's failure to explain how its evidence could

establish as a matter of law that it cannot be liable for the wrongs alleged.  The sum of Alaska's

argument is that "the duties involved with servicing the loan ... were performed by ... SN

Servicing Corporation, not Alaska," pursuant to "a specific written servicing contract" between

SN and Alaska.  (Doc. 62 at 7-8).   This description of the relation between Alaska and SN

sounds precisely like an agency, of the sort typically found in the mortgage-service context.  *See,*

*e.g., Weninegar v. S.S. Steele & Co.*, 477 So. 2d 949, 952, 957 (Ala. 1985)(negligence action

against a mortgagee-principal could proceed based on the conduct of the servicing entities-agents

under contract with the mortgagee).  It is also consistent with the testimony of the foreclosing

attorney that she pursued foreclosure "on behalf of" Alaska.  (Tucker Deposition at 19).

        As was the case in *Weninegar*, "[t]he existence and scope of a principal-agent

---

        [2]*E.g., Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 672 (10th Cir. 1998)("The district
court has discretion to go beyond the referenced portions of these [summary judgment]
materials, but is not required to do so."); *accord Jones v. Sheehan, Young & Culp, P.C.*, 82 F.3d
1334, 1338 (5th Cir. 1996); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir.
1989); *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1139 (7th Cir. 1984); *Karlozian*
*v. Clovis Unified School District*, 2001 WL 488880 at *1 (9th Cir. 2001); *see also* Local Rule 7.2.

relationship is generally a question of fact for determination by the jury; therefore, summary

relationship is generally a question of fact for determination by the jury; therefore, summary judgment on the issue of agency is inappropriate." 477 So. 2d at 957. Alaska has not even asserted, much less shown, that the plaintiff cannot establish that SN was its agent. And if an agency exists, that SN rather than Alaska "performed" the acts giving rise to liability is beside the point; the principal is ordinarily responsible for the unintentional torts of its agent committed while working within the line and scope of the agency, *e.g., Ex parte Wild West Social Club, Inc.*, 806 So. 2d 1235, 1241 (Ala. 2001), and can be held liable for even the intentional torts of the agent under certain circumstances. *E.g., Todd v. Modern Woodmen of America*, 620 So. 2d 591, 593 (Ala. 1993). Alaska has not attempted to show that, assuming an agency relationship, it cannot be held responsible for any or all of SN's wrongful conduct.

**II.  Wrongful Foreclosure.**

Alaska concedes that there can be a wrongful foreclosure under Alabama law if the foreclosure occurs after the debt has been satisfied. (Doc. 78 at 5-6). But, it argues, its evidence negates satisfaction of the debt, and the plaintiff has no countering evidence with which to create a genuine issue of material fact. (Doc. 62 at 11-12).

Alaska identifies two payment histories as establishing that the loan was not paid off: a NationsCredit history covering March 1994 to May 1998, and an SN history covering June 1999 to June 2003. (Doc. 62 at 6, 12 & Exhibits H, L). Alaska patently cannot establish that the loan was not paid off before early 2005 with records that end in June 2003. The same is true of delinquency notices from the year 2000. (*Id*. at 11 & Exhibits J, K). Alaska's final bit of evidence — a delinquency letter from August 2004, (*id*., Exhibit L), is at least closer chronologically to the 2005 foreclosure proceedings, but it suffers from the same fatal temporal defect. In short, Alaska has not shown, by reference to materials on file, that there is no genuine issue of material fact as to whether the loan was satisfied before foreclosure proceedings were initiated in early 2005. Thus, no burden shifts to the plaintiff to demonstrate the existence of such a genuine issue.[3]

---

[3]The Court does not rule that documentary evidence was required to meet Alaska's initial burden; an affidavit or declaration from an Alaska or SN representative with personal knowledge

Although the foregoing discussion is sufficient to require rejection of Alaska's motion for summary judgment on this ground, the Court pauses to examine some of the arguments made concerning calculation of the debt. First, the salient terms of the contract. The principal amount of the loan was $21,036.24. (Plaintiff's Exhibit 1). The "Agreed Rate of Charge [was] 15.5163% per year on the unpaid principal balance." (*Id.*). The loan was to be paid off by 120 equal installments of $345.66, with each payment due on the 29th of the month, beginning April 29, 1994. (*Id.*). Total payment under this contemplated payment schedule was $41,479.20 (120 x $345.66). (Plaintiff's Exhibit 2). Failure to make a payment within 10 days of its due date subjected the borrowers to a "late charge of 5% of the part of the payment which is late," (Plaintiff's Exhibit 1), which, on a payment of $345.66, would amount to $17.28. In addition, the borrowers "agree[d] to pay Lender the greater of $20.00 or the actual charge imposed by the depository institution for the return of an unpaid or dishonored check or similar instrument." (*Id.*).

The plaintiff has testified that she made 120 payments of $345.66, (Plaintiff's Deposition at 79-80), and from this she concludes that she must have paid off the loan. (Doc. 76 at 13). Indeed, she says, according to the incomplete payment histories the defendants have produced, she has paid at least $46,371.31 on the loan, (Doc. 76 at 4, 7), or almost $4,900 more than the $41,479.20 the note indicates is required to pay off the loan.

Alaska identifies several things that could have caused or contributed to a failure to pay off the loan despite these payments. First, it notes the provision for late fees and indications in the payment histories that a number of payments were late. It appears from the histories that the late-charge provision was repeatedly invoked, but Alaska has not quantified the amount of such charges or attempted to show that they were of sufficient magnitude to prevent the plaintiff from paying off the loan.

Second, Alaska points to the provision for bounced check fees, but the payment histories are even less clear about the frequency and magnitude of such charges. Third, Alaska states that SN held partial payments (presumably, any payment less than $345.66) and did not credit the plaintiff's account until an entire payment was received. Such a practice would predictably

_____

of the status of the plaintiff's loan as of early 2005 would have sufficed, but none was proffered.

increase the number of potential late charges, but it is not clear that Alaska was entitled to hold

partial payments, since the note provides that late charges apply only to "the part of the payment

which is late."  (Plaintiff's Exhibit 1).

Alaska's strongest argument is its last — that the plaintiff made numerous payments after

the due date, resulting in additional interest charges.  There is evidence that both NationsCredit

and SN calculated interest based on the daily unpaid principal balance on the loan and applied

payments first to accrued interest, with only the excess (if any) going to reduce principal.  The

NationsCredit payment history suggests that the plaintiff quickly fell behind on her payments

and that, as this occurred, her payments were increasingly applied against accrued interest.  It is

easy to see how a pattern of late payments (including payments late due to insufficient funds)

could prevent a borrower under such a regime from making significant dents in the principal

unless she made extra payments sufficient to bring accrued interest current, and the plaintiff has

identified no evidence that she did anything more than periodically "catch up" with her late

payments — sufficient to stave off foreclosure but inadequate to keep accrued interest current so

that a significant part of each monthly payment could again be applied to principal.

For Alaska's argument to prevail, at least six premises would have to be satisfied: (1) that

additional interest accrued when payments were late; (2) that the contract documents allowed

such accrual;  (3) that Alaska applied payments first to accrued interest; (4) that it was

contractually authorized to do so; (5) that Alaska calculated interest on late payments under a

formula that generated sufficient additional interest charges to keep the loan from being paid off;

and (6) that Alaska was contractually authorized to use this formula.  The plaintiff offers several

challenges to Alaska's position, none of which addresses the latter four premises.  The

battleground thus becomes the accrual of interest in the event of late payments.

As to whether Alaska in fact calculated interest when payments were late, the plaintiff

states that Alaska's "own witness concedes that it has incomplete data as to how interest was

calculated over the course of the loan." (Doc. 76 at 13).  The plaintiff does not identify the

witness or the testimony relied upon, so the Court cannot evaluate it.   Her only other foray in

this area is to point to a form "new loan set up sheet" on which both "Y" and "N" are circled

next to the phrase, "simple interest code."  (Plaintiff's Exhibit 25).  Without any evidence that

this line is intended to reflect whether interest will accrue on late payments, it is of dubious

import.  Moreover, an SN deponent testified that interest accrued on a daily basis on late payments, (Fogleman Deposition at 145), and NationsCredit's payment history seems clearly to reflect that NationsCredit accrued interest similarly.  (Plaintiff's Exhibit 7).

As to whether Alaska was authorized to charge interest on late payments, the plaintiff offers two related arguments: (1) that the contractual documents negate the practice; and (2) that the contractual documents are silent on the matter, so that the parties could not have agreed that it would occur.  (Doc. 76 at 2, 9, 14).  The Court considers these arguments in turn.

As discussed above, the note calls for 120 payments of $345.66, and the truth-in-lending form and mortgage identify the total payments as $41,479.20 on a principal loan amount of $21,036.24.  (Plaintiff's Exhibits 1, 2, 3).  This, says the plaintiff, "reflects the parties' understanding that the interest was pre-computed."  (Doc. 76 at 2).  What appears to be the case, however, is that interest was pre-computed based on the assumption that all payments would be made on the due date.  Certainly the note contemplates payments on the 29th on every month, and even the truth-in-lending statement identifies $41,479.20 as "[t]he amount you will have paid after you have made all payments *as scheduled*."  (Plaintiff's Exhibit 2 (emphasis added)).  Under the plaintiff's reasoning, she could have made no payments for ten years and (assuming the lender did not foreclose) could have then presented a check for $41,479.20 on the final day of the loan and thereby satisfied her debt.  This could not easily occur, however, because it would result in an interest rate far below the 15.5163% expressly provided in the note.[4]

Nor are the contract documents silent on the accrual of interest.  The note expressly provides that the "Agreed Rate of Charge [is] 15.5163% per year on the unpaid principal balance."  (Plaintiff's Exhibit 1).  Every day that the loan is unsatisfied, there is an unpaid principal balance, and the later that payments are made, the longer that any given principal balance remains unpaid, apparently accruing interest at 15.5163%.

In addition to her questions about the accrual and payment of interest, the plaintiff identifies what she perceives as errors and other problems with the payment histories.  (Doc. 76

---

[4]Ten years simple interest on $21,036.24 at 15.5163% per annum would total approximately $32,640.461, not the approximately $20,442.96 difference between $21,036.24 and $41,479.20.

at 9-10). Most of these have to do with the application of entire payments to interest; as discussed above, these would appear to have resulted from the accrual of interest on late payments and the application of payments first to accrued interest.

The only other irregularity the plaintiff notes is a single payment as to which $71.24 was attributed to interest and the balance is not shown to have been applied to principal, late charges, or any other category. (Plaintiff's Exhibit 7 at 4). This is indeed curious, but on its own is not of sufficient magnitude to suggest that the loan was satisfied.

If Alaska is correct with respect to the accrual and payment of interest, it would appear very unlikely that the loan was satisfied before foreclosure was initiated. If the plaintiff is correct with respect to the accrual and payment of interest, it would appear very unlikely that the loan was not satisfied before foreclosure was initiated. Since Alaska failed to carry its initial burden on motion for summary judgment, it would be inappropriate for the Court to make any definitive ruling on this issue (or on any of the other matters discussed above). This is especially so since neither party asserted that the contract documents are unambiguous in this respect or requested the Court to construe them as a matter of law. The parties may, however, desire to re-evaluate their arguments in light of the impression they have made.

In its reply brief, Alaska trots out new arguments. These come too late to be considered on motion for summary judgment, *e.g., Mariano v. Potter*, 2006 WL 907772 at \*3 & n.6 (S.D. Ala. 2006), but they are insufficient on other grounds as well.

Alaska's suggestion that Alabama law precludes a plaintiff from showing a fact issue as to whether a loan is satisfied unless the defendant's own documents reflect that the loan was satisfied, (Doc.78 at 6), is premature since, as discussed above, Alaska has produced no documents reflecting that the loan remained unsatisfied when foreclosure proceedings were initiated. It also misreads the authority on which it is based and would lead to the absurd result of empowering a defendant to immunize itself from liability for wrongful foreclosure by the simple expedient of producing an erroneous, or even fraudulent, payment history.

As to its correct insistence that no foreclosure actually occurred, Alaska has offered no authority for the proposition that a claim of wrongful foreclosure cannot succeed if the defendant instituted foreclosure proceedings but backed down when, as here, challenged by an attorney for

the plaintiff.  The law in Alabama appears unfavorable to Alaska on this point.  *See Cooper v. Elba Exchange Bank*, 496 So. 2d 41, 43 (Ala. 1986)(allowing a wrongful foreclosure action to proceed based on the publication of a foreclosure notice, even though foreclosure had not occurred).

In short, on the evidence and argument presented, Alaska is not entitled to summary judgment as to this claim.

### III.  Negligence.

Alaska argues that it owed the plaintiff no duty of care in connection with accepting, applying and accounting for payments because, pursuant to its service contract, SN performed these functions.  (Doc. 62 at 12-13).  Alaska does not specify whether its argument is that it could have no duty of care to the plaintiff because it did not directly interact with her or that it delegated its duty of care to SN.  Neither tack is supported by reasoning or authority.  In the only case cited by Alaska, the Court found a duty of care owed by a bank to an individual who, like Alaska, had no direct contact with the plaintiff.  *See Patrick v. Union State Bank*, 681 So. 2d 1364, 1365 (Ala. 1996).  And even if a principal can delegate a duty of care to its agent, as discussed in Part I, standard agency principles generally make the principal liable for the agent's negligent breach of duty.  The argument that Alaska did not breach its duty, (Doc. 62 at 13-14), fails for the reasons stated in Part II.  The additional arguments based on *Patrick* raised in Alaska's reply brief, (Doc. 78 at 8), come too late for consideration.

### IV.  Wantonness.

In its opening brief, Alaska's only arguments concerning this claim were the ones discussed in Part III, (Doc. 62 at 12-14), which fail for the reasons stated therein.  In its reply brief, Alaska for the first time argues that the plaintiff has insufficient evidence that Alaska acted with the requisite mental state to support a claim of wantonness.  (Doc. 78 at 9-10).  As noted in Parts II and III, the Court will not consider arguments raised for the first time in a reply brief.

### V.  Breach of Mortgage and Note.

Alaska's only argument is that it did not breach the mortgage and note because it was

entitled to accrue interest on late payments and to charge late fees.  (Doc. 62 at 14-15).  For the reasons set forth in Part II, the Court does not reach this argument.  For reasons also stated in Part II, prevailing on this issue would not necessarily entitle Alaska to summary judgment, since it has not shown that the plaintiff did not satisfy her debt after the last date shown in Alaska's records.

## VI.  Fraud.

The plaintiff concedes that summary judgment is appropriate as to this claim.  (Doc. 76 at 11 n.12).

## VII.  Defamation.

Alaska's only argument is that the foreclosure notice did not constitute a false statement, because the plaintiff was in default.  (Doc. 62 at 16-18).  As set forth in Part II, however, Alaska has not met its initial burden of pointing out, by reference to materials on file, that there is no genuine issue of material fact as to whether the plaintiff was in default when foreclosure proceedings were commenced.

## CONCLUSION

For the reasons set forth above, Alaska's motion for summary judgment as to the plaintiff's fraud claim is **granted**.  In all other respects, the motion is **denied**.

DONE and ORDERED this 19th day of September, 2006.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE